**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KWIK-MART, INC.,**

    **Plaintiff,**

v.                                                                   Case No: 6:23-cv-1814-PGB-NWH

**ATEGRITY SPECIALTY**
**INSURANCE COMPANY,**

    **Defendant.**
_____/

## ORDER

This cause is before the Court on Plaintiff Kwik-Mart, Inc.'s ("**Plaintiff**") Amended Motion for Leave to File Amended Complaint. (Doc. 46 ("**Motion to Amend**")). Defendant Ategrity Specialty Insurance Company ("**Defendant**") filed a response in opposition. (Doc. 50). Upon consideration, the Motion to Amend is due to be granted.[1]

**I.   BACKGROUND**

This case stems from an alleged breach of a commercial property insurance contract. (Doc. 1-1 (the "**Complaint**")).

In the Complaint, Plaintiff states that it purchased a commercial property insurance policy from Defendant that provided coverage for Plaintiff's "business located at 18440 Paulson Drive, Unit K, Port Charlotte, Florida 33954" (the

---

[1] Accordingly, the Motion for Summary Judgment (Doc. 43) is due to be denied as moot.

"**Address identified in the Complaint**"). (*Id.* ¶ 4). The insurance policy identified in the Complaint was provided policy number 01-C-PK-P20069153-0 and issued to Plaintiff for the policy period from December 12, 2022 to December 12, 2023 (the "**Policy identified in the Complaint**"). (*Id.*; Doc. 1-2, p. 15). However, the Policy identified in the Complaint actually provided coverage for Plaintiff's commercial property located at 1400 E. Silver Star Rd., Ocoee FL, 34761 (the "**insured Address**"). (*See* Doc. 1-2, pp. 1, 17; Doc. 42, ¶ 2; Doc. 43, pp. 3, 11). Moreover, the Policy identified in the Complaint was a renewal of a prior policy issued by Defendant, Policy No. 01-C-PK-P20040490-0, which initially provided coverage for the insured Address from December 12, 2021 to December 12, 2022. (Doc. 46, p. 4; Doc. 46-1, ¶ 4; Doc. 46-2; Doc. 50, p. 12).

The Complaint proceeds to assert that, "[o]n or about December 15, 2022," a "windstorm" resulted in Plaintiff suffering a covered loss to the Address identified in the Complaint. (Doc. 1-1, ¶ 7). Plaintiff informed Defendant of the situation, to which Defendant assigned "Claim Number #01CCP2023000526." (*Id.* ¶¶ 10–11). However, Defendant "refused to accept coverage [and compensate Plaintiff] for all the damages sustained." (*Id.* ¶¶ 13–16).

Consequently, Plaintiff initiated this action on August 21, 2023. (*See generally id.*). Shortly thereafter, on September 20, 2023, Defendant removed the case to this Court. (Doc. 1). Following various extensions, the deadline for

discovery was January 6, 2025. (Doc. 40).[2] During the discovery period, Plaintiff obtained an expert, Justino Ferrer Hopgood, P.E. ("**Mr. Hopgood**"), who concluded in his report that the actual cause of loss was Hurricane Nicole on or about November 9-10, 2022. (Doc. 46, pp. 3–4; Doc. 50, pp. 7, 11). However, Plaintiff "awaited the expert's deposition testimony [on January 6, 2025] to clarify the causation conclusions before seeking amendment," an approach to which "Defendant did not raise any objection[]." (Doc. 46, pp. 3–4; Doc. 50, p. 7). Yet, Defendant points out that Plaintiff "waited an additional 43 days [after Mr. Hopgood's deposition] to file" the Motion to Amend. (Doc. 50, p. 7).

Ultimately, on February 3, 2025, Defendant filed a Motion for Summary Judgment. (Doc. 43). Shortly thereafter, on February 18, 2025, Plaintiff filed the instant Motion to Amend. (Doc. 46). Therein, Plaintiff requests that the Court allow various amendments to the Complaint to align the pleadings with the newly discovered date of loss and associated allegations. (*Id.*). Defendant responded in opposition (Doc. 50), and the matter is ripe for review.

---

[2] At the time the Motion to Amend was filed—on February 18, 2025—Plaintiff appeared to be under the impression that "discovery remain[ed] open." (Doc. 46, p. 5). Such was not the case. As indicated in the Case Management and Scheduling Order—which has been extended three (3) times—discovery closed on January 6, 2025. (Doc. 40).

On a related note, the Court remains perplexed as to why the deposition of Defendant's engineering expert, Anthony J, Oliver, PE ("**Mr. Oliver**"), was taken after the discovery period expired. (Doc. 50, pp. 6, 8). Thus, the use of Mr. Oliver's deposition is unauthorized as it was taken on January 24, 2025—past the discovery deadline and without leave of Court. (*Id.*).

Alas, given the circumstances discussed herein, the Court may entertain a request to extend relevant deadlines, such as discovery, to further ensure neither party is prejudiced.

## II.     STANDARD OF REVIEW

"The decision whether to grant leave to amend a complaint is within the sole discretion of the district court." *Laurie v. Ala. Ct. of Crim. Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001). Pursuant to Federal Rule of Civil Procedure 15, courts should "freely" grant parties leave to amend pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2). "This standard of liberality is mandated absent any apparent reason to the contrary." *Gropp v. United Airlines, Inc.*, 847 F. Supp. 941, 945 (M.D. Fla. 1994); *see Laurie*, 256 F.3d at 1274. In fact, to deny a motion to amend the complaint, there must be a substantial reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *E.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laurie*, 256 F.3d at 1274.

Accordingly, the Eleventh Circuit has instructed that "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of the dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021); *see also In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) ("The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" (quoting *Foman*, 371 U.S. at 182)).

Setting Rule 15 aside, if a motion to amend the pleadings is filed after the deadline established in the Court's Case Management and Scheduling Order ("**CMSO**"), the movant must first show good cause for the belated request to amend under Federal Rule of Civil Procedure 16(b)(4). *See Romero v. Drummond Co.*, 552 F.3d 1303, 1318–19 (11th Cir. 2008) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)). "The primary measure of good cause is the movant's diligence in attempting to meet the [CMSO's] requirements." *Strubel v. Hartford Ins. Co. of the Midwest*, No. 8:09-cv-01858-T-17-TBM, 2010 WL 11507711, at *1 (M.D. Fla. June 18, 2010). The Eleventh Circuit has indicated that the good cause standard "precludes modification [of the CMSO] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) (citation omitted).

### III. DISCUSSION

Plaintiff requests leave to file an amended complaint to rectify various inaccuracies in the operative Complaint. (Doc. 46). Primarily, Plaintiff's proposed amended complaint sets forth: (1) the proper insured Address covered under the Policy identified in the Complaint; (2) the date of loss as concluded by Plaintiff's expert during discovery and the associated weather occurrence; and (3) the policy that covered the newly discovered date of loss. (*Id.*; *see* Doc. 46-1). The Court finds that good cause exists to extend the deadline to amend the pleadings and that "justice so requires" the Court allow Plaintiff to amend its Complaint.

First, the Court addresses Plaintiff's request to correct the Address identified in the Complaint. (Doc 46-1; *see* Doc. 50, p. 8).[3] In the Complaint, Plaintiff incorrectly identified the address covered by the Policy identified in the Complaint as 18440 Paulson Drive, Unit K, Port Charlotte, Florida 33954. (Doc. 1-1, ¶ 4). However, the Policy identified in the Complaint clearly insures a different property—1400 E. Silver Star Rd., Ocoee FL, 34761. (*See* Doc. 1-2, pp. 1, 17; Doc. 42, ¶ 2; Doc. 43, pp. 3, 11). The bottom line is that neither party harps on this proposed amendment because the parties are well aware of the actual address of the property insured by the Policy identified in the Complaint and have been conducting discovery accordingly. As such, arguing *prejudice* over what amounts to a scrivener's error—one in which both parties have been aware of—is pointless.

Next, Plaintiff requests to amend the date of loss to reflect newly discovered evidence that suggests a different date of loss, a different cause of loss, and a different insurance policy. (Docs. 46, 46-1). During discovery, Plaintiff retained expert Mr. Hopgood who identified a different date and cause of loss than Plaintiff had originally asserted in the Complaint. (Doc. 46, pp. 3–4; Doc. 50, p. 1). Specifically, Mr. Hopgood opined that the actual cause of loss was Hurricane Nicole on or about November 9-10, 2022—roughly a month prior to the date of loss

---

[3] The Court acknowledges that Plaintiff does not explicitly discuss amending the Address identified in the Complaint in its Motion to Amend—Plaintiff simply updates the address to be the insured Address in the attached proposed amended complaint. (*See* Doc. 46; *see also* Doc. 50, p. 8). However, the Court finds this point largely irrelevant—the parties have been conducting discovery since the beginning of this litigation as if the damage occurred at the insured Address. Moreover, there is no discussion of prejudice with regard to simply amending the address itself.

that Plaintiff first asserted in the Complaint. (Doc. 46, pp. 3–4; Doc. 50, pp. 7, 11). However, the new "cause" of loss is hardly much different. In the Complaint, Plaintiff claimed that the damage resulted from an unnamed "windstorm." (Doc. 1-1, ¶ 7). Now, Plaintiff claims that the damage occurred from a hurricane a few weeks prior—in other words, another *highspeed* windstorm.

Consequently, considering discovery revealed a different date and cause of loss, Plaintiff also requests to amend the Policy identified in the Complaint to reflect the policy in effect at the time of the new date of loss. (Doc. 46, p. 2; Doc. 46-1). Alas, the Policy identified in the Complaint was merely a renewal of the policy in effect at the time of the newly discovered date of loss. (Doc. 46, p. 4; Doc. 50, pp. 2, 12; Doc. 46-2; Doc. 46-3). In any event, Plaintiff states—with no opposition from Defendant—that the two policies had identical terms and conditions. (Doc. 46, p. 2; *see* Doc. 50).

Defendant argues that these proposed amendments "change[] the entire basis for years of litigation" considering Defendant "defended" the claims "solely relating to a December 15, 2022 reported date of loss." (Doc. 50, pp. 7–8). Defendant asserts that "[h]ad [the] alternate date of loss been reported during the claim investigation, a separate claim would have been opened under a different policy . . . effective for" a different policy period. (*Id.* at p. 7). Defendant concludes that it "will have to redo most, if not all, of the discovery in this case." (*Id.* at p. 9). Ultimately, the Court disagrees.

The reality is that the parties have both been conducting discovery as if the property was the actual insured Address and the weather occurrence was a windstorm. Moreover, the Policy identified in the Complaint and the proposed policy at issue appear to be identical at their core. (Docs. 46-2, 46-3). Thus, the fact that the Policy identified in the Complaint was "different" than the newly alleged policy at issue is somewhat of a technicality considering substantively, the policies are the exact same.

Simply put, the Court acknowledges that this case does not represent exemplary pleading or the utmost diligent lawyering. But ultimately, such shortcomings do not provide the Court adequate reason to find that no good cause exists to modify the CMSO and to deny amendment given the liberality of Rule 15. Here, there was no apparent bad faith, repeated failure to cure deficiencies in the Complaint by prior amendments, or evidence of futility of the proposed amendments. *See Foman*, 371 U.S. at 182; *Laurie*, 256 F.3d at 1274.[4] Moreover, Plaintiff's failure to request amending its pleading by the deadline established in the Court's CMSO does not necessarily equate to a lack of diligence in attempting to meet the requirements of the scheduling order.[5] In sum, the Court finds that

---

[4] The Court acknowledges that various deadlines have long passed and that some deadlines are quickly approaching. As such, if the parties find that an extension of certain deadlines is necessary to minimize potential prejudice from the late amendment, the parties may file a motion requesting such. The Court will take the relevant circumstances into consideration and grant relief accordingly.

[5] Essentially, Defendant argues that Plaintiff does not demonstrate good cause to modify the CMSO because Plaintiff "waited an additional 43 days [after Mr. Hopgood's deposition] to file" the Motion to Amend. (Doc. 50, p. 7). Although Plaintiff presumably could have filed the Motion to Amend a month earlier than Plaintiff did, such a delay does not provide the Court

good cause exists to modify the CMSO's deadline to amend pleadings and that the amendment is warranted under Rule 15 and governing case law.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Amended Motion for Leave to File Amended Complaint (Doc. 46) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (Doc. 43) is **DENIED AS MOOT**.

3. On or before **July 15, 2025**, Plaintiff shall file its amended complaint in compliance with this Order and all applicable rules and law. Failure to timely comply with this Order and file an amended complaint will result in the dismissal of this action without prejudice and without further notice.

**DONE AND ORDERED** in Orlando, Florida on July 8, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

with sufficient reason to find that Plaintiff was not diligent in attempting to comply with the deadlines set forth in the CMSO.